UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| QUAD CITIES WATERKEEPER INC., an Illinois not for profit corporation, and PRAIRIE RIVERS NETWORK, an Illinois not for profit corporation, </br></br>        Plaintiffs,</br></br>v.</br></br>DAVID G. BALLEGEER, an individual, BALLEGEER TRUCKING, INC., an Illinois corporation, BALLEGEER EXCAVATING, INC., an Illinois corporation, and FRANCIS BALLEGEER, an individual,</br></br>        Defendants. | Case No. 4:12-cv-4075-SLD-JEH |

ORDER

Plaintiffs Quad Cities Waterkeeper ("Waterkeeper") and Prairie Rivers Network ("Prairie Rivers"), conservation organizations, are suing Defendants David G. Ballegeer, Ballegeer Trucking, Inc., Ballegeer Excavating, Inc., and Francis Ballegeer under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(1). Before the Court is Plaintiffs' Motion for Clarification, ECF No. 89, regarding the Court's Order of March 26, 2015 ("the March 26 Order"), ECF No. 88. The Motion for Clarification argues that the March 26 Order failed to rule completely on Plaintiffs' Motion for Summary Judgment, ECF No. 61, and requests a complete ruling. For the reasons stated below, the Court agrees with Plaintiffs, and the Motion for Clarification is GRANTED. Furthermore, as explained below, Plaintiffs' Motion for Summary Judgment, insofar as the Court did not previously rule on it as to standing, is DENIED, and the Court's March 26 Order supplemented as detailed herein.

1

# BACKGROUND

The Court described the factual background underlying this case extensively in its March 26 Order, and will not repeat those facts here. Mar. 26, 2015 Order 2–5. Instead, the Court will briefly summarize the facts relevant to the disputed element of standing that this Order addresses—that is, the facts relating to the alleged injury to Plaintiffs' recreational and aesthetic interests caused by Defendants' activities.

Francis Ballegeer owns several hundred acres of property along the Green River in Illinois. Parties' Joint Stipulation of Undisputed Material Facts ¶ 30 ("JUMF"), ECF No. 37. From 1985 to the present day, Defendants have used an excavator to push waste concrete generated by Ballegeer Excavating onto the banks of the river, and into the river itself ("the dump site"). *Id.* at ¶¶ 7, 9. This concrete remains where it has been deposited, for the most part. *Id.* at ¶ 16. During the course of these activities, dirt was discharged onto the river's banks and into the river. *Id.* at ¶ 27. David Ballegeer also removed sand bars from the river with an excavator. Defs.' UMF ¶¶ 18, 19.

In a declaration, Art Norris, Executive Director for Waterkeeper and member of Prairie Rivers, averred that he has boated, swum, photographed, and fished on the Green River for the last eleven years, and has done so on the stretch of river that passes through Francis Ballegeer's property. Norris Decl. ¶ 6, ECF No. 62. He claims that the discharges of concrete, rebar, and dirt have harmed his enjoyment of the river. *Id.* ¶ 11. Norris observed the concrete and the other offensive materials from the water during boat trips he took down the river, as well as from adjacent land.[1] *Id.* ¶ 14. Norris has boated and taken fishing trips down the lower Green River several times a year since 2002, and intends to keep doing so. *Id.* ¶¶ 21–27. Norris claims to

---

[1] The parties dispute whether Norris and his compatriots must have been trespassing in order to glimpse the dump site. As explained below, it does not matter whether or not they were.

have noticed a diminution in the population of fish and mussels downstream of Ballegeer's property, and surmises that the discharge of soil and other pollutants from the property is to blame. *Id.* ¶¶ 30–35. He fears that that these populations, and his enjoyment of them, are at risk because of Defendants' activities. *Id.*

John Daggett is a member of Waterkeeper. Daggett Decl. ¶ 4, ECF No. 63. He, too, has recreated extensively on the Rock and Green Rivers, including fishing for smallmouth bass. *Id.* ¶¶ 5–6. He believes that the quality of fishing in the area has diminished, and, like Norris, fears and believes that Defendants' dumping and dredging activities are to blame. *Id.* ¶¶ 13–16. Daggett has seen the dump site "first hand many times from the river." *Id.* ¶ 18. In his view, this activity has "[taken] a beautiful section of river and [made] it look like an unattractive concrete dump," *id.* ¶ 17. Daggett once saw a crane dredging in the river from the vantage of his boat, also in the river. *Id.* ¶ 21. He also claims, later on, to have seen the crane operating from the vantage of the Hennepin Canal nearby. *Id.* ¶ 22. "Due to the berm," he was unable to see the river itself, but could see the crane. *Id.*

## DISCUSSION

### I. Standard on a Motion to Reconsider

Federal Rule of Civil Procedure 60(b) permits a court, "[o]n motion and just terms," to relieve a party from a "final judgment, order, or proceeding" for a number of enumerated reasons, and also for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Such relief is "an extraordinary remedy that is to be granted only in exceptional circumstances." *Provident Savings Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir.1995). It is warranted "only upon a showing of extraordinary circumstances that create a substantial danger that the underlying

judgment was unjust." *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994).

### II. Analysis

#### a. Rule 60(b)

Plaintiffs have styled this motion a request for reconsideration pursuant to Rule 60(b), which the Court doubts is appropriate to these circumstances. As the advisory committee notes explain, Rule 60(b) was designed to do what it says it does—provide parties with relief from a court's *final* rulings. The rule does not extend to orders of the court that are interlocutory in nature; that is to say, those orders that are not final and from which appeal does not lie. *See Kapco Mfg. Co, Inc.. v. C & O Enterprises, Inc.*, 773 F.2d 151, 154 (7th Cir. 1985) (explaining that "'final' in Rule 60(b) must modify 'order, or proceeding' as well as 'judgment.'"). If it did extend to interlocutory orders, it would be redundant with a court's "ordinary power to conduct pending proceedings and rethink earlier orders." *Id.* This "ordinary power" is described in part by Rule 54(b), which requires a court not to enter final judgment when deciding fewer than all of the claims in a case (unless there is no just reason for delay), and permits the court to revise any such non-final order at any time before final judgment is entered. Final judgment has not been entered in this case; thus, the court may revisit and revise the grants and denials of summary judgment in its March 26 Order without need for resort to the operation of Rule 60.

#### b. The Court's March 26 Order

Plaintiffs are correct that the Court did not completely rule on their Motion for Summary Judgment in the March 26 Order. Plaintiffs sought "summary judgment on standing," Pls.' Mot. Summ. J. 11–13, arguing that they had met their burden of demonstrating injury in fact, causation, and redressability, *id. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

*Inc.*, 528 U.S. 167, 180–81 (2000) (holding that to satisfy Article III's standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and [(]3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that plaintiffs bear the burden of establishing standing). Defendants replied, both in their response and their own motion for summary judgment, that Plaintiffs had not met their burden. Resp. Pls.' Mot. Summ. J. 36–49, ECF No. 73; Defs.' Mot. Summ. J. 10–20, ECF No. 36. The parties disputed both whether Plaintiff environmental organizations had the capacity to sue in their own rights, and whether the organizations' members had standing to sue. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (holding that an organization may sue on behalf of its members only when, inter alia, "its members would otherwise have standing to sue in their own right").

The Court, in denying Defendants' motion and partly granting Plaintiffs', held that (1) Norris and Daggett had sufficiently shown themselves to be members of Plaintiff organizations, Mar. 26, 2015 Order 9–10; (2) Waterkeeper had the capacity to bring suit during the relevant time period, *id.* at 10–11; Waterkeeper's members had sufficient indicia of membership for standing purposes, *id.* at 11–13; and that Norris was a member of Prairie Rivers, *id.* at 13–14. The Court determined, in inquiring into whether Plaintiffs' members had sufficiently shown injury in fact, that the injuries alleged by the members were sufficiently concrete and specific to support standing. *Id.* at 15–16.

The parties also disagreed about where and how the effects of Defendants' allegedly injurious rebar and dredging activities could be felt. Defendants had argued that Plaintiffs' members—for purposes of the motions, Daggett and Norris—could not have suffered injury to

5

their recreational appreciation of the Green River without trespassing onto Defendants' property in order to view the dump site. Defs.' Mot. Summ. J. 16. Plaintiffs asserted (1) that the activities were viewable from the adjacent and publicly accessible Hennepin Canal Parkway, Resp. Defs.' Mot. Summ. J. 21; (2) that the public has an easement of navigation down the Green River that affords boaters a clear view of the dump site, *id.* at 23; and (3) that the dredging had produced—or Plaintiffs legitimately feared it would produce—unhappy downstream effects on mussel and fish populations, which Plaintiffs' members were in the habit of recreationally appreciating, *id.* at 22. The Court resolved the matter by deciding that Plaintiffs' third contention precluded the entry of summary judgment for Defendants. Mar. 23, 2015 Order. Citing similar concerns raised by plaintiffs in *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. at 183–84, the Court wrote: "Because the Court concludes that a reasonable jury could find Plaintiffs' concerns to be reasonable, the Court DENIES Defendants' Motion for Summary Judgment on the basis that Plaintiffs lack standing." Mar. 26, 2015 Order 18. Nowhere, however, did the Court grant or deny Plaintiffs' request for summary judgment on standing.

As explained above, the Court possesses the "ordinary power" of all district courts to revise any of its non-final orders before entry of final judgment. *Kapko*, 773 F.2d at 154. The Court now exercises this power in order to rule on Plaintiffs' request for summary judgment on the matter of its standing to sue, originally articulated in Plaintiffs' Motion for Summary Judgment.

### c. Plaintiffs' Motion for Summary Judgment as to Standing

As an initial matter, the Court was incorrect to state that Plaintiffs' claims could survive summary judgment because a jury could find Plaintiffs' concerns reasonable. Standing, although an "indispensable part of the plaintiff's case," *Defenders of Wildlife*, 504 U.S. at 561, is a

6

jurisdictional question, and "[j]urisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations," *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citing 5C. Wright & Miller, *Federal Practice & Procedure* § 1350 (1969)). The proper basis on which to deny Defendants' motion for summary judgment was that Plaintiffs, whose burden it is at every phase of the litigation to show standing, *Defenders of Wildlife*, 504 U.S. at 561, had adequately documented injury in fact at the summary judgment phase via affidavits. *See Friends of the Earth*, 528 U.S. at 183 (determining that for purposes of resisting defendants' summary judgment motion, "sworn statements, as the District Court determined, adequately documented injury in fact"). Defendants could not show that they were entitled to judgment as a matter of law on the question of standing, because Plaintiffs averred facts that showed standing—namely, that they would suffer or had suffered recreational harms to their downstream pursuits on the Green River. *See* Mar. 26, 2015 Order 17–18, Fed. R. Civ. P. 56. A jury, however, has nothing to do with it.

To determine that Plaintiffs have shown standing sufficiently to survive summary judgment is not to determine that Plaintiffs have done so for purposes of trial.

> In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Defenders of Wildlife*, 504 U.S. at 561. *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115 n.31 (1979) ("Although standing generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings, it sometimes remains to be seen whether the factual allegations of the complaint necessary for standing will be supported adequately by the evidence adduced at trial."). This Court lacks the power to permanently declare that standing exists; the

7

issue may always be challenged. Should it emerge at any phase of the litigation that Plaintiffs lack standing, and thus the Court lacks jurisdiction to hear their claims, the case would have to be dismissed. *See, e.g.*, *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)) ("Jurisdiction is the power to declare law, and without it the federal courts cannot proceed."). *See also Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("No party can waive the [subject matter jurisdiction] defect or consent to jurisdiction.").

Thus, the Court cannot forbid Defendants from seeking at trial to "controvert[ ]," *Defenders of Wildlife*, 504 U.S. at 561, Plaintiffs' claimed grounds for injury in fact. The Court has already determined that standing has been sufficiently shown to survive summary judgment, via Plaintiffs' affidavits about downstream harms. The question is whether the Court could or should go further and grant Plaintiffs' motion for summary judgment as to standing, and if it did so, what difference that would make.

Instructive in this respect is *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003). There, the district court granted plaintiffs' motion for a "Declaratory Judgment That They Have Standing." *Id.* at 514. The Fourth Circuit disapproved of the district court's behavior in two ways. First, the Fourth Circuit determined that "the judgment was in fact simply a grant of partial summary judgment on an element of [the plaintiff's] case." *Id.* It so found in part because a declaratory judgment has prejudicial effect whereas (as explained above), a grant of partial summary judgment is interlocutory. Because of the "paramount importance of achieving a correct judgment on the issue of Article III standing," *id.* at 516, the non-prejudicial effect of a partial grant of summary judgment was more appropriate to any provisional determination about standing. Second, and for the same reason, the court of appeals decided that

the district court had abused its discretion in denying Defendants' motion to reconsider its jurisdictional ruling. *Id.*

Turning to the instant case, it is plain that Plaintiffs sought and seek summary judgment as to standing, as opposed to a declaratory judgment on the matter.[2] If the Court were to grant summary judgment, it would amount, as the *American Canoe* court observed, to an "early decision on one of the jurisdictional prerequisites to the consideration of [Plaintiffs'] case on the merits." 326 F.3d at 514. Since the Court has already determined that Plaintiffs have made a showing of standing sufficient to survive summary judgment, *see* Mar. 26, 2015 Order at 7–18, and must revisit the factual basis for standing if Defendants successfully call it into question, up to and including at the time of trial, *see Defenders of Wildlife*, 504 U.S. at 561, the only difference between granting summary judgment to Plaintiffs on this issue, and withholding it, would be (arguably) to subject any later visitation of the issue by the Court to some sort of constraint on its discretion, such as the "law of the case" doctrine. *See American Canoe*, 326 F.3d at 515–16. The Court declines to do so; the Motion for Summary Judgment is denied.

However, two important matters remain. First, Plaintiffs and Defendants seem concerned that, even should Defendants not attempt to challenge the factual basis of Plaintiffs' standing at trial, Plaintiffs will have some burden of production at trial as to standing, since their motion has been denied. *See* Mot. Reconsideration 1 ("Clarification on this issue is important because it will significantly affect the length of any potential trial, as well as pre-trial preparation."). The concern is misplaced. "[A]t the final stage, [jurisdictional] facts [adduced at summary judgment] (*if controverted*) must be supported adequately by the evidence adduced at trial." *Defenders of*

---

[2] The Court erroneously stated that "Plaintiffs seek a declaration that they have standing" in its March 26 order. Mar. 26, 2015 Order 5. Plaintiffs repeated the Court's language from that Order in their motion for clarification. Mot. Clarification 5 n.1, 6. However, Plaintiffs' original request in their motion for summary judgment was for summary judgment as to standing, and Plaintiffs seem to have construed their request consistently in their motion for clarification. *See* Pfs.' Mot. Summ. J. 13.

*Wildlife*, 504 U.S. at 561 (emphasis added). As the Supreme Court suggested in *Defenders of Wildlife*, ordinarily, a factual showing sufficient to survive summary judgment will suffice to carry Plaintiff's burden to show standing through the trial phase, unless that factual showing is disputed by a defendant. *Id.* This Court took the facts set out in Norris's and Daggett's affidavits to be true, and determined on that basis that standing had been sufficiently shown. *See id.* ("In response to a summary judgment motion, however, the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true."). It remains Plaintiffs' burden to show standing at every phase of the proceedings, but if they have already adduced evidence at the summary judgment phase, and that evidence remains uncontroverted by Defendants at trial, Plaintiffs need not present duplicative or extra evidence at trial in support of standing. *Id.* If Defendants wish to controvert the facts set forth in the affidavits, they may seek to do so at trial, and Plaintiffs would then have to support them adequately with evidence adduced at trial.

Second, however, the Court now determines, in revisiting its March 26 Order, that Plaintiffs have adequately set forth separate and independent grounds for standing from those upon which the Court has already ruled, grounds upon which their case can equally well survive a motion for summary judgment. That is, Plaintiffs set forth in their Motion for Summary Judgment, and associated affidavits, evidence sufficient to show that their members suffer and will suffer harm to their recreational interests not just by viewing the dump site from nearby land vantages, but also by the simple act of boating down the Green River. Norris Decl. ¶ 14, Daggett Decl. ¶ 18. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) (explaining that a road to be built through Sequoia National Park could constitute an injury in fact, because "[a]esthetic and

environmental well-being, like economic well-being, are important ingredients of the quality of life in our society[.]").

Defendants offer no evidence contesting that the dump site is visible from the river. Rather, they argue only whether it is legal for Plaintiffs' members to float down the river and suffer harm to their aesthetic and recreational enjoyment in the middle of the river by viewing the site. Reply Defs.' Mot. Summ. J. 20–22, ECF No. 80. Plaintiffs argue that in Illinois, the public has an easement of navigation through all navigable-in-fact waterways, no matter who owns the land around or underlying these waterways. Resp. Defs.' Mot. Summ. J. 23, ECF No. 69. Thus, Plaintiffs were legitimately present in the spot where their aesthetic interests were harmed by the dump site, and, as they float down the river, will be so again if the site persists in its present form. *Id.* Defendants respond that Francis Ballegeer owns the land surrounding and underlying the Green River "to the complete exclusion of the general public," Reply Defs.' Mot. Summ. J. 19, and that furthermore, the Green River is not navigable in fact, so the general public has no easement of navigation through the portion Ballegeer owns, *id.* at 20–22.

Defendants are incorrect. "The rule in [Illinois] is that the public have an easement for purpose of navigation in waters which are navigable in fact, regardless of the ownership of the soil." *Du Pont v. Miller*, 141 N.E. 423, 425 (Ill. 1923). In turn, "the question whether these waters are navigable depends upon the question whether they are of sufficient depth to afford a channel for useful commerce." *Schulte v. Warren*, 75 N.E. 783, 785 (Ill. 1905). *Schulte* does not provide much guidance on what might constitute a "channel for useful commerce," suggesting that such a waterway would be "of practical utility to the public as such," *id.*, and observing that "[t]he fact that there is water enough in places for rowboats or small launches, answering

11

practically the same purpose, or that hunters and fishermen pass over the water with boats ordinarily used for that purpose, does not render the waters navigable," *id.*

However, the uncontroverted evidence in the instant case shows that the Green River is navigable in fact. The river, above where it crosses Ballegeer's property, flows at between 120 and 1,000 cubic feet per second. Resp. Mot. Defs.' Summ. J. 24. At the point where it crosses Ballegeer's property, it is 150 to 200 feet wide. *Id.* Plaintiffs navigated this portion of the river with motorboats. *Id.* Plaintiffs have offered enough evidence to show that the Green River, as it passes through Ballegeer's property and by the dump site, is a channel for useful commerce and of practical utility to the general public, and thus, navigable in fact.[3] It follows that the public has an easement of navigation through it, and that Plaintiffs have suffered and will suffer injury in fact by so navigating.[4]

---

[3] "Useful commerce" might be taken to suggest, in the restrictive sense of the word "commerce," merely commercial traffic. However, "commerce" is a general term, importing not just mercantile exchange, but "[t]he transportation of persons and property by land, water, and air." *Black's Law Dictionary* 269 (6th ed. 1990). Such an interpretation of the term in *Schulte* is further compelled by the Illinois Supreme Court's use of the modifier "useful," which imports meanings broader than the merely transactional.

[4] Defendants' argument that the land underlying the Green River was not a "public highway for commerce in 1818," Reply. Defs.' Mot. Summ. J. 21, and hence, not navigable in fact, is misplaced. Defendants appear to contend that only waters whose title passed to the states upon their admission to the Union can be navigable in fact. *Id.* at 20. The position is a misunderstanding of *Schulte*, which stands for the proposition that *privately held waters* are nonetheless subject to a public easement if navigable in fact. *Schulte*, 75 N.E. at 785. (*Schulte* granted an injunction to a landowner against use of his swampy land by hunters, explaining that, while an easement was provided for the purposes of navigation, no such easement existed for the further purpose of hunting. *Id.* at 786.) *Schulte* and similar cases would be rendered substantial nullities—to say nothing of common sense—if the only rivers subject to public easements of navigation were those whose title had passed to the state of Illinois upon its admission to the Union. Furthermore, the cases Defendants cite in support of their position do not support it. For instance, *The Montello*, 87 U.S. 430, 442 (1874), determined that, for purposes of the interpretation of federal statutes, the Fox River was navigable in fact even though its tumultuous course had been improved by artificial means. Reasoning that the Fox River was, in its present condition, a channel for useful commerce, the Court illuminatingly wrote:

> The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway. Vessels of any kind that can float upon the water, whether propelled by animal power, by the wind, or by the agency of steam, are, or may become, the mode by which a vast commerce can be conducted, and it would be a mischievous rule that would exclude either in determining the

Thus, Plaintiffs have shown injury in fact, and hence, standing to sue, both because their members are reasonably concerned about downstream harms caused by Defendants' activities, as explained in the Court's March 26, 2015 Order; and also because they have shown harm to their aesthetic and recreational interests by direct viewing of the dump site from the river.  Although Plaintiff's motion for summary judgment on standing is denied, the Court has found a sufficient factual showing as to standing on summary judgment for both the above reasons, and to successfully attack Plaintiff's standing at trial, Defendants would have to controvert the factual bases for both of them.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Clarification, ECF No. 89, is GRANTED.  Insofar as Plaintiffs' Motion for Summary Judgment was not previously ruled on, it is DENIED.  The Court's March 26, 2015 Order on the motions for summary judgment is modified as explained herein.

Entered this 27th day of October, 2015.

s/ Sara Darrow

SARA DARROW<br>UNITED STATES DISTRICT JUDGE

---

navigability of a river.

*Id.* at 441–42.  This Court will not seek to propound such a mischievous rule.