UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| QUAD CITIES WATERKEEPER INC., an Illinois not for profit corporation, and PRAIRIE RIVERS NETWORK, an Illinois not for profit corporation, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 4:12-cv-4075-SLD-JEH ) ) |
| v. | ) ) |
| DAVID G. BALLEGEER, an individual, BALLEGEER TRUCKING, INC., an Illinois corporation, BALLEGEER EXCAVATING, INC., an Illinois corporation, and FRANCIS BALLEGEER, an individual, | ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

Plaintiffs Quad Cities Waterkeeper ("Waterkeeper") and Prairie Rivers Network ("PRN"), conservation organizations, are suing Defendants David G. Ballegeer, Ballegeer Trucking, Inc., Ballegeer Excavating, Inc., and Francis Ballegeer under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(1).  Before the Court are Defendants' motion for leave to file excess pages in support of a motion detailing contested facts, ECF No. 94; Defendants' motion to supplement the November 3, 2015 minute entry, ECF No. 95; and Defendants' motion for reconsideration of the Court's October 27, 2015 order on questions of Article III standing, ECF No. 97.  For the following reasons, the first two motions are GRANTED IN PART, insofar as they seek leave to exceed the type volume limitations and to present material to the Court, and DENIED IN PART, insofar as they seek to contest Plaintiffs' Article III standing.  The motion for reconsideration is DENIED.  Additionally, the Court

GRANTS Plaintiffs' renewed motion for summary judgment as to standing, contained in their response to Defendants' motion to supplement, ECF No. 98.

## PROCEDURAL HISTORY

The Court has already related the case's factual background extensively in its March 26, 2015 and October 27, 2015 Orders, and will not repeat that background here.  Mar. 26, 2015 Order 2–5, ECF No. 88; Oct. 27, 2016 Order 2–3, ECF No. 91.  Rather, what follows is a brief summary of the somewhat unusual procedural facts that have resulted in the present motions.

The March 26, 2015 Order partially granted Plaintiffs' motion for summary judgment, and denied Defendants' motion for summary judgment, including summary judgment as to Article III standing.  Mar. 26, 2015 Order 1.  The Court's October 27, 2015 Order responded to the parties' joint request, ECF Nos. 89, 90, for clarification as to whether or not the earlier order had granted *Plaintiffs'* request for summary judgment on the standing issue.  The October 27 Order acknowledged that Plaintiffs' request had not been ruled on, Oct. 27, 2015 Order 4; and, while declining to enter summary judgment for Plaintiffs on standing, clarified that Plaintiffs had shown facts sufficient to support standing at the summary judgment phase on two independent grounds, *id.* at 6–13.

A hearing followed on November 3, 2015, at which Defendants claimed that they would submit to the trier of fact various factual evidence controverting standing.  Nov. 3, 2015 Minute Entry.  The Court directed Defendants to submit this evidence in written form, with an evidentiary hearing to follow "if needed." *Id.*  Defendants' evidence was submitted as the first two motions presently before the Court, ECF Nos. 94, 95.  Additionally, Defendants filed a motion pursuant to Rule 54(b) requesting that the Court revise its ruling on the second independent basis for standing identified in the October 27, 2015 Order.

Before any of these motions were ruled on, the parties submitted a joint motion, ECF No. 103, agreeing that Defendants' motions to supplement, Plaintiffs' response, and the already filed motions for summary judgment "contain everything this Court needs to make a determination of whether Plaintiffs' [sic] have the requisite jurisdictional standing to bring this lawsuit." Mot. Vacate 2. The motion accordingly sought to vacate the provisionally set evidentiary hearing and asked the Court to make a ruling on the strength of the filings before it. *Id.* at 4. The Court granted this motion. Dec. 7, 2015 Text Order.

## DISCUSSION

### I.   Defendants' Motions Contesting Factual Basis for Standing

Technically, Defendants' motions on standing seek leave to supplement the minute entry of the November 3, 2015 hearing, ECF No. 95, and leave to exceed the type volume limitations in so doing, ECF No. 94. *See* Local Rule 7.1(B)(4)(a). Both motions contain and seek admission of a document entitled "Defendants' Motion Detailing Contested Facts Regarding Plaintiffs' Standing." Insofar as they seek admission of the contained memorandum in response to the Court's request for the proposed factual basis of Defendants' standing challenge, they are granted. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) ("[I]t is clear that the decision whether to apply the [local] rule strictly or to overlook any transgression is one left to the district court's discretion.").

Substantively, however, the motions are one, and ask that "the Court grant Defendants the opportunity to present the facts [on standing] described herein [to the trier of fact]." Mot. Supplement 28. However, Defendants appear to have conceded, via their agreed motion, that the facts offered to assail Plaintiffs' standing need *not* be submitted to the trier of fact, and can instead be evaluated on the basis of affidavits, exhibits, and arguments alone. Since Defendants

3

do not seek summary judgment that standing does not exist (a motion the Court has already denied; *see* Mar. 26, 2015 Order), but rather to "require Plaintiffs to meet their corresponding burden of proof as to their Article III standing at trial," Mot. Supplement 28, the Court notes that Defendants are essentially asking, in motion form, that the Court not grant summary judgment for Plaintiffs as to standing at the present time. In arguing that evidence as to standing need not be presented further (at trial), Plaintiffs are, as they assert in their response to Defendants' motions, renewing their request for summary judgment as to standing, and requesting that the court determine that "there is no genuine dispute as to any material fact and [Plaintiff] is entitled to judgment as a matter of law" with respect to the facts that support their Article III standing to bring suit. Fed. R. Civ. P. 56(a). *See* Resp. Mot. Supplement 28, ECF No. 98.

In support of their argument that Plaintiffs must be required to prove they have standing at trial, Defendants claim that (1) Art Norris, a member of one of the Plaintiff organizations, and other members, including John Daggett, have not possessed a fishing license for the last five years, Mot. Supplement 6–10; (2) Norris expressed uncertainty about being able to view mussels in the Green River in 2014 and did not possess a Scientific Research Permit at this time, *id.* at 10–14; (3) Norris provided insufficient evidence of plane trips he claims to have taken over the Green and Rock Rivers, *id.* at 15; (4) Norris and others have not possessed Water Usage Stamps for the past five years, *id.* at 16–17; (5) the instant lawsuit is based upon a personal vendetta by members of Plaintiff organizations, *id.* at 17–20; (6) web galleries posted by Art Norris did not contain pictures of wildlife, *id.* at 20; (7) it is impossible to see the site of Defendants' alleged violations from the Hennepin Canal walking trial, where Norris claimed to have done so, *id.* at 20–22; (8) a court-appointed process server was unable to serve Norris at an address listed for him in an unrelated Illinois Circuit Court case, *Id.* at 23; (9) Plaintiff organization Quad City

Waterkeeper's address, as listed on their website, does not correspond to a physical location at which Waterkeeper can be found and contacted, *id.* at 24–25; (10) Norris is not a member of PRN, *id.* at 25; (11) vegetation growth promoted by Defendants' concrete dumping activities have retarded rather than promoted the emission of pollutant particulates into the Green River, *id.* at 26–27; (11) for the same reason, Plaintiffs' injuries are not redressable, *id.* at 27–28.

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact . . . and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Constitutional standing, a limitation on the jurisdiction of federal courts, is "an essential and unchanging part of the case-or-controversy requirement of Article III [of the Constitution of the United States]," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal citations omitted). The party invoking federal jurisdiction bears the burden of showing each of these three elements, which are not mere pleading requirements, but themselves matters upon which "the plaintiff bears the burden of proof." *Id.* at 561. Accordingly, the Plaintiff must show them "with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Federal courts at all levels must be assured of their subject matter jurisdiction over cases before them, and hence, of a plaintiff's Article III standing. Indeed, both district and appellate court must entertain challenges to subject matter jurisdiction at every phase of the proceedings. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). For this reason,

appellate courts have suggested that district courts should be especially cautious in entering or refusing to reconsider entries of summary judgment as to standing. *See American. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515–16 (4th Cir. 2003) (holding that law of the case doctrine should not have barred a district court from reconsidering its entry of summary judgment as to standing for plaintiffs); *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) (explaining that "issues such as subject matter jurisdiction or appellate jurisdiction may be particularly suitable for reconsideration"). Nonetheless, entry of summary judgment, when the appropriate evidentiary showing for this phase has been met, may be appropriate, and have the benefits of allowing parties to focus their energies on the issues truly in dispute. *See American Canoe*, 326 F.3d at 516 ("While a ruling on the standing issue [before discovery began] may have served beneficial purposes . . . it should not be accorded the preclusive effect of a decision rendered after full trial, *or even a decision rendered after full discovery*." (emphasis added)). This makes sense; after full discovery has occurred, and the parties have been permitted ample time to depose witnesses and gather evidence as to standing issues, the only remaining differences for trial, as with all elements of a claim able to survive summary judgment, should be over disputed material facts. If no material facts as to standing are genuinely in dispute, summary judgment as to standing may be appropriate.

    B. Analysis

    The Court previously held that, while "Plaintiffs have made a showing of standing sufficient to survive summary judgment," it would be inappropriate to render judgment in Plaintiffs' favor on standing at that time, and run the risk of creating an inappropriately preclusive effect on later attempts by Defendants to challenge standing, either by renewed motions for summary judgment or direct evidence offered at trial. Oct. 27, 2015 Order 9.

However, in light of the weakness of Defendants' factual challenges to Plaintiffs' showing as to standing, explained below, the Court is now confident that summary judgment for Plaintiffs on standing is appropriate.

The Court previously held that Plaintiffs had established injury in fact to their recreational interests by two independent means: a showing that their members had experienced and legitimately feared that they would experience diminution of their downstream recreational enjoyment because of harm to wildlife caused by concrete dumping, Mar. 26, 2015 Order 15–16; and a showing that their members had experienced and legitimately feared they would experience diminution of their recreational enjoyment in boating past Defendants' dump site on the Green River, Oct. 27, 2015 Order 10–13. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (concluding that plaintiffs adequately alleged injury-in-fact when they averred that they used the affected area and that the aesthetic and recreational values of the area will be lessened to them because of the challenged activity). Defendants previously challenged Plaintiffs averments of standing on grounds of their legal right to place themselves in a position to suffer such harm, and the supposed generality and conclusoriness of Plaintiffs' allegations of harm.[1]  Defs.' Resp. Mot. Summ. J. 36–50, ECF No. 73. The Court having deemed these attacks unavailing, Defendants now offer what amount to embroideries on a theme—as explained in detail below, that Plaintiiffs' affidavits are likely to be mendacious for one reason or another.

However, each of these attacks is too speculative and conclusory, and unsupported by evidence, to cast into real doubt Plaintiffs' affidavits. Neither the "mere existence of some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

---

[1] Defendants also challenged Plaintiffs' standing on a number of other grounds they have now abandoned, most notably whether or not Plaintiff organizations had standing to sue in their own right.

(1986), nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat an otherwise properly supported motion for summary judgment.

Plaintiffs produced a number of documents suggesting their legitimate fears about the recreational and aesthetic harm their members may suffer as a consequence of Defendants' concrete dumping activities, including expert testimony, empirical observation of diminution in wildlife, and a letter from the United States Fish and Wildlife Service suggesting that Defendants' activities "could cause significant impacts to the [Green River's] aquatic life." Resp. Mot. Supplement 6–7. To call the sufficiency of this evidence of harm into question, Defendants rely almost entirely on elliptical suggestions that Plaintiffs may not actually have observed the things they claim to have on the river downstream of Defendants' property— because Plaintiffs' members claim to have fished for many years on the river, and yet Defendants can find no record of their fishing licenses; or because Plaintiff's members used speculative language in emails about the presence of wildlife on the Green River and may have illegally removed some. Mot. Supplement 6–14. As Plaintiffs correctly observe, there are obvious factual and legal reasons why these observations do not call into question the veracity of Plaintiffs' affidavits, or suggest any likelihood that they would be called into question via cross-examination of the members in question.[2]

More broadly, however, facts used to attack affiants' credibility may forestall summary judgment only if "the credibility of the movant's witnesses is challenged by the opposing party and *specific* bases for possible impeachment are shown." *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 575 (7th Cir.1987) (emphasis added). *See, e.g.*, *Captain v. ARS Nat.*

---

[2] Most notably, Daggett is a disabled veteran and permitted by Illinois law to fish without a license, Resp. Mot. Supplement 11, and the full quotations from Norris and Daggett's emails imply considerably less uncertainty, read in their complete context, than Defendants' abbreviated quotations suggest, *id.* at 15.

*Servs., Inc.*, 636 F. Supp. 2d 791, 795 (S.D. Ind. 2009) (holding that factual dispute on summary judgment as to witness's testimony was not created when witness's claims were controverted only by a general statement about a corporation's policy contradicting the witness's testimony, and not by someone with personal knowledge of the events to which witness testified). Here, none of Defendants' attacks on Daggett's and Norris's testimony rises above the level of the speculative or coincidental, or suggests that Defendants could provide a specific basis for the plausible impeachment of each witness, were he called at trial to testify on the facts heretofore adduced that show standing. Nothing is offered to suggest that either Daggett or Norris lied about what he observed on the Green and Rock Rivers, and nothing is offered to suggest that their fears are without basis in observable fact and/or expert advice.

Much of Defendants' offered evidence does not directly contradict or call into question facts the Plaintiffs claim to have observed in support of their standing to use; rather, it is aimed merely at suggesting that Plaintiffs bear animosity for Defendants. So, Defendants' argument that Plaintiffs overflew the Green River only or largely in preparation to sue Defendants does not go to a ground upon which the Court has found standing. And, while intriguing, Defendants' tale of the instant litigation's origin in bitter local politics is not specific or substantial enough to suggest that Plaintiffs are not actually concerned about environmental harm to the Green and Rock Rivers.

Defendants' other offered facts similarly fail to suggest that Plaintiffs are mistaken about or have misrepresented facts material to standing. Since the Court has not based its holdings on standing upon the visibility or lack thereof of Defendants' property from the Hennepin Canal, various witnesses' dueling claims about it are not relevant. Whether or not Norris was successfully served at a local address in unrelated proceedings is vanishingly relevant, and in any

case soundly controverted by the numerous pictures Plaintiffs have submitted of Norris recreating on the Green River. *See* Resp. Mot. Supplement 25. So too, the story of Defendants' non-exhaustive search for Waterkeeper's physical headquarters does little to suggest that its members do not exist or are not legitimately concerned about harm to the rivers. And Defendants' assertion that the concrete they have placed on the banks of their property helps rather than harms riverine ecology does nothing to suggest that the contrary view, evidently held by Plaintiffs, is not reasonable or a sufficient basis for standing.

Defendants have shown no evidence to controvert Plaintiffs' theory of standing via downstream harm or aesthetic harm while boating across Defendants' property. In the absence of any such showing, and for all the reasons adduced in the Court's earlier orders finding standing sufficient to survive motions for summary judgment, summary judgment as to Plaintiffs' standing is now appropriate.

## II.  Defendants' Motion for Reconsideration Of the Court's Standing Ruling

Citing Rule 54(b)'s provision that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time," Defendants seek reconsideration of the Court's legal holding that Plaintiffs and the general public have an easement of navigation down the Green River at the point where it crosses Defendants' property. Mot. Reconsider 2. The Court made this determination in support of its finding that Plaintiffs have standing because they have boated and will continue to boat down the Green River where it passes Defendants' property, and suffer harm to their recreational and aesthetic interests by viewing the concrete that, all parties agree, is clearly visible from the river at that point. Oct. 27, 2015 Order 10–13. The Court explained in its October 27, 2015 Order that that Plaintiffs' possible ownership of the

riverbed at that point created no impediment to this basis for standing because "[t]he rule in [Illinois] is that the public have an easement for purpose of navigation in waters which are navigable in fact, regardless of the ownership of the soil." *Du Pont v. Miller*, 141 N.E. 423, 425 (Ill. 1923).

Defendants do not raise new arguments in their request that the Court reverse its earlier ruling. Rather, they repeat their old one: that at the time of Illinois's admission to statehood, only title to those rivers and streams that were then navigable in their "natural and ordinary condition" passed from the federal government to the State of Illinois. Mot. Reconsider 4–6. This is referred to as the "navigability for title" test. *See PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 1228 (2012). Thus, Defendants' reasoning goes, for Plaintiffs to have a legal right to boat down the Green River, it must have been navigable at the time of statehood, which it assertedly was not. Mot. Reconsider 7–8. But this argument, as the Court has explained, is wrong. Whether title to the bed of the river, or any part of it, lies with the federal government, the State of Illinois, or with Defendants, is of no moment to whether the public has an easement of navigation across it. *See Scranton v. Wheeler*, 179 U.S. 141, 150 (1900) ("[T]he navigable waters [of America] are the public property of the nation, and subject to all the requisite legislation by Congress. In the hands of the state or of the state's grantee the bed of a navigable river remains subject to an easement of navigation, which the general government can lawfully enforce, improve, and protect.").[3]

---

[3] The sources upon which Defendants rely also draw the distinction between navigability for title and navigability in fact for purposes of determining easements. For example: "The right of the public to use the surface of a stream or lake also depends on a navigability test. This test, however, is not necessarily the same navigability test as that applied to determine the question of stream bed ownership." J.W. Looney & Steven G. Zraick, *Of Cows, Canoes, and Commerce: How the Concept of Navigability Provides an Answer If You Know Which Question to Ask*, 25 U. Ark. Little Rock L. Rev. 175, 181 (2002).

There is no dispute that the Green River where it passes through Defendants' property is navigable by canoes and other small craft. Thus, the public has an easement of navigation through it, and may assert standing to sue Defendants if, in so doing, it will view and be harmed by Defendants' dumping of concrete on the riverbank. The Court declines to revise its original ruling on this matter.

## CONCLUSION

Accordingly, Defendants' motion for leave to file excess pages in support of a motion detailing contested facts, ECF No. 94, and Defendants' motion to supplement the November 3, 2015 minute entry, ECF No. 95, are GRANTED IN PART, insofar as they seek admission of the motion and evidence they contain, and DENIED IN PART, insofar as they seek to force Plaintiffs to prove standing at trial. Plaintiffs' renewed motion for summary judgment as to Article III standing, ECF No. 98, is GRANTED. Defendants' motion for reconsideration of the Court's October 27, 2015 Order on questions of Article III standing, ECF No. 97, is DENIED.

Entered this 22nd day of January, 2016.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE